UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SAMUEL OTIS PRATT, | ) |
| Plaintiff, | ) |
| v. | ) Case No: 1:16-cv-02216-RCL |
| MICHAEL POMPEO, SECRETARY, U.S. DEPARTMENT OF STATE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is the Motion for Partial Dismissal of the plaintiff's Second Amended Complaint [ECF No. 24] by the defendant Michael Pompeo,[1] Secretary of the U.S. Department of State, and all responses and replies thereto. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the defendant's partial motion to dismiss.

## BACKGROUND

This case involves allegations of (1) race discrimination and (2) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. ECF No. 20-3 at 16-18, ¶¶80-93. While the original complaint contained additional claims of hostile work environment, harassment, and discrimination on account of the plaintiff's sex and age, each of these claims has since been withdrawn by the plaintiff, leaving only two claims under Title VII remaining. *See* ECF Nos. 1, 11, 20-3.

---

[1] Michael Pompeo has replaced Rex Tillerson as U.S. Secretary of State. The caption has been updated accordingly.

1

Samuel Pratt is a 60-year-old, African-American male who has worked for the U.S. Department of State (hereafter the "Department") since 1986. ECF No. 20-3 at 3, ¶9. His two claims under Title VII arose during his tenure as a management officer working at the U.S. Embassy in Eritrea (hereafter the "Embassy"). Pratt alleges several disputes with his supervisors while he worked at the Embassy, during which he attempted to call attention to activities conducted by Embassy personnel that he viewed as wasteful and in some instances contrary to U.S. State Department rules and regulations. *Id.* at 5-6, ¶¶17-23. These observations and objections, he alleges, were met with disdain by his supervisors, who declined to heed his concerns. *Id.*

Following these alleged confrontations, Pratt claims he engaged in protected activity when he stated during a meeting with his supervisors on October 30, 2015, that he was no longer being informed of tasks and events at the embassy, which he believed significantly hindered his ability to do his job effectively. *Id.* at 6-8, ¶¶24-33. He alleged that the decisions to cut him out of the decision-making and management processes were retaliatory measures in response to his prior "whistleblowing activities" of calling attention to the various instances of wrongful behavior he allegedly witnessed at the Embassy. *Id.* at 8, ¶32. He also stated that his supervisors both had "a closer relationship with the white staff, who were also being treated better at the workplace." *Id.* at 8, ¶33.

On February 16, 2016, after two more alleged instances of careless and unlawful behavior by State Department personnel, Pratt filed an Equal Employment Opportunity (EEO) claim of discrimination and retaliation with the State Department. *Id.* at 8-9, ¶¶34-36; ECF No. 10-3 at 6. In retaliation for this claim and his prior protected activity, the plaintiff contends, he was (1) sent a letter of admonishment, (2) given an allegedly negative employee evaluation report (EER), (3) denied the position of Acting Deputy Chief of Mission (DCM), (4) involuntarily removed from

the Eritrea office, and (5) subsequently given a lower ranking position at the U.S. Embassy in Mauritania. *Id.* at 9-16, ¶¶40-79. This sequence of events forms the foundation of the plaintiff's Title VII allegations of race discrimination and retaliation against the State Department.

The State Department issued its Final Agency Decision on October 11, 2016, which determined that Pratt "provided insufficient evidence to show the [Department's] reasons for its actions were pretextual" and "has not established his claims of discrimination." ECF No. 10-3 at 22. Pratt now sues after exhausting all administrative remedies available.

Pratt has amended his complaint twice. *See* ECF Nos. 1, 11, 20-3. After the State Department filed its first motion to dismiss [ECF No. 10], Pratt filed his First Amended Complaint [ECF No. 11], which withdrew his claims of (1) race discrimination under 42 U.S.C. § 1981, (2) hostile work environment and harassment under § 1981, (3) retaliation under § 1981, (4) sex discrimination under Title VII, and (5) hostile work environment and harassment under Title VII. *See* ECF No. 11. The plaintiff subsequently filed notice with the Court withdrawing his two claims under the Age Discrimination in Employment Act (ADEA) [ECF No. 12.], leaving only two claims under Title VII left in the case. The State Department has brought a motion for partial dismissal of the claims arising out of (1) the Embassy's refusal to appoint Pratt acting DCM), and (2) the negative EER issued to Pratt following his alleged whistleblowing activities. This motion is now ripe for consideration.

## DISCUSSION

### I. Legal Standard—Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To carry this burden, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

3

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While well-pleaded factual allegations within the complaint must be accepted by the Court as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id*. A mere "legal conclusion" need not be accepted as true. *Twombly*, 550 U.S. at 555.

**II. Title VII discrimination and retaliation claims must allege an adverse action to state a claim for relief.**

Pratt's conclusory argument that he need only plead "that he was being discriminated against and that he wanted to be treated similarly as the white staff in the Embassy" in order to be entitled to discovery is incorrect. ECF No. 17 at 5. An adverse action is an essential element of both discrimination and retaliation claims under Title VII, and a complaint must allege that element in order to state a claim upon which relief may be granted. *Winston v. Clough*, 712 F. Supp. 2d 1, 10 (D.D.C. 2010) (quoting *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)) (listing "an adverse employment action" as an element a plaintiff must plead in Title VII discrimination cases); *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Employees of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (holding that a claim of retaliation under Title VII must state "that the employee suffered a materially adverse action by the employee's employer . . ."). An adverse action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Jones v. Castro*, 168 F. Supp. 3d 169, 178 (D.D.C. 2016).

Both of the allegations to be evaluated pursuant to the Department's partial motion to dismiss must therefore allege adverse actions in order to survive. As discussed below, while the Department's refusal to appoint Pratt as acting DCM while his supervisor was traveling does not constitute an adverse action, the circumstances surrounding the negative EER Pratt received following his EEO activity have been alleged with sufficient factual clarity to survive a 12(b)(6) motion.

### A. The defendant's decision not to install the plaintiff as acting DCM is not an adverse employment action for the purposes of Title VII.

First, the State Department has moved to dismiss all claims arising out of its decision to forego appointing Pratt to the temporary acting DCM position. The Department's argument is sound, as it is established within the D.C. Circuit that the "outright denial of a temporary position" is not one of the "terms, conditions, or privileges of employment contemplated by Title VII" and does not qualify as an adverse employment action for the purposes of a Title VII claim. *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002).

The Court notes that the plaintiff failed to even mention, let alone defend, the denial of the acting DCM position as an adverse action in his response to the Department's Renewed Motion to Dismiss, which he incorporates into his response to the Departments Motion for Partial Dismissal. *See* ECF No. 17. Because this failure to appoint Pratt as acting DCM does not constitute an adverse action, Pratt's Title VII claims will be dismissed to the extent that they arise out of this specific allegation.

### B. Pratt has alleged sufficient facts to sustain his allegations that the negative EER he received was given in retaliation for his protected activity and subsequent EEO complaint.

The second set of allegations implicated in the partial motion to dismiss asserts that the negative EER given to Pratt was discriminatory and retaliatory by nature. This allegedly negative

5

EER was given to Pratt approximately five months after the October 30, 2015 meeting in which he alleges he engaged in protected activity, and two months after he lodged a formal EEO complaint with the State Department. ECF No. 20-3 at 10, ¶43. Pratt's complaint alleges an actual loss of "$30-40,000" as a result of the purportedly negative EER, as a fifth positive EER "would have entitled Pratt to a promotion from a Grade II employee earning $120,000/year to a Grade I employee with the potential to earn $150-160,000/year." *Id*. at 10, ¶¶45-46. This concrete assertion of financial harm was added to Pratt's First Amended Complaint after the Department correctly identified in its first motion to dismiss that a negative employee evaluation is not an adverse action in the D.C. Circuit unless it affects the employee's grade or salary. *Compare* ECF No. 10-1 at 13 *with* ECF No. 11 at 10, ¶¶45-46.

In its partial motion to dismiss, the Department renews its objections to Pratt's use of his employee evaluation report to establish an adverse action for Title VII purposes. ECF No. 24-1 at 1. In the D.C. Circuit, "'formal criticism or poor performance evaluations are [not] necessarily adverse actions' and they should not be considered such if they did not 'affect[] the [employee's] grade or salary.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Brown v. Brody*, 199 F.3d 446, 457-58 (D.C. Cir. 1999)). Because of the highly speculative nature of performance evaluations and their ultimate effects on employees, employee evaluations "ordinarily are not actionable under Title VII." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009). In assessing whether a performance evaluation was adverse, the inquiry focuses on "whether discrimination or retaliation caused a significant, tangible harm." *Walker v. Johnson*, 798 F.3d 1085, 1095 (D.C. Cir. 2015). While it is difficult to demonstrate that a negative or declining performance evaluation constitutes an adverse action, performance evaluations may not "categorically be ruled out" when assessing Title VII claims. *Id.*

While the Department was correct to assert that Pratt's allegations regarding the negative EER failed to allege an adverse action in his initial complaint, Pratt's later amendments elevated the allegations above a mere "threadbare recital[] of the elements" of a Title VII claim. *See Iqbal*, 556 U.S. at 678. Taken as true for the purposes of a 12(b)(6) motion, Pratt's amendments detail a specific, tangible harm caused by the evaluation, and this Court has no precedential basis to dismiss all claims arising out of the facts alleged.

The Court notes, however, its skepticism of Pratt's dubious claim of *entitlement* to a promotion after being given a fifth consecutive, positive EER. While Pratt is not required to support his allegations with evidence at the pleading stage, the Department has demonstrated in its motion to dismiss that the guidelines for promotion of Foreign Service employees state nothing about a numerical or sequential threshold with respect to positive employee evaluations. *See* Foreign Affairs Manual, Promotion of Members of the Foreign Service, 3 FAM 2323-2326, https://fam.state.gov/FAM/03FAM/03FAM2320.html. Promotion is instead based more generally on "merit and the needs of the Service," with decisions being made by selection boards after the evaluation of a recommended employee's "performance folder[]." *Id*. at 3 FAM 2323.1-1; 2326.1-3. Without any authority corroborating the entitlement to a promotion alleged in the complaint, Pratt's negative EER could not likely be distinguished from the negative performance evaluations classified by the above-cited D.C. Circuit precedent as insufficient to allege adverse employment actions. If Pratt is not able to produce evidence that he was, in fact, *entitled* to a promotion upon the grant of a fifth consecutive, positive EER, or that his work performance during the period evaluated was so strong that a negative review would not make sense but for discriminatory or retaliatory intent by his supervisors, these allegations will likely not survive summary judgment.

### III. Pratt has alleged sufficient facts to demonstrate a causal connection between his negative EER and his race or prior EEO activity.

In its motion, the Department also attacks the causal connection alleged between any adverse action and Pratt's race or prior EEO activity. A well-pleaded Title VII claim is subject to "traditional principles of but-for causation" and must allege "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013). A causal connection may be inferred by "showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after the activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). Claims that rely only on temporal proximity between protected activity and alleged adverse actions to establish a causal connection must demonstrate that the two events occurred "very close" together, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam), which this Court has often construed to mean a period of less than three months. *McIntyre v. Peters*, 460 F. Supp. 2d 125, 133 (D.D.C. 2006).

Pratt's complaint alleges that the negative EER was given to him in April of 2016 because of his protected activities. ECF No. 20-3 at 10, ¶44. The Department attempts to invoke the "three month rule" sometimes used by this Court as a guideline for assessing the sufficiency of temporal proximity in Title VII cases. ECF No. 51-1 at 14. In so doing, it asserts that the temporal gap between Pratt's alleged protected activity during a meeting with his supervisors in October of 2015 and the issuance of his allegedly negative EER is too wide to show causality. This assertion fails to recognize that Pratt's filing of an EEO complaint in February of 2016 also constitutes protected activity under Title VII. *See Peters*, 460 F. Supp. 2d at 133 (recognizing the filing of an EEO complaint as protected activity). Consequently, the correct temporal gap to be measured is the two months between February, 2016, and April, 2016. Even if the Court were to

ignore any other allegations that may be construed to assert facts beyond mere temporal proximity, Pratt's allegations concerning his negative EER satisfy the causal connectivity element of a Title VII claim.

## CONCLUSION

For the reasons stated above, Pratt's allegations concerning his denial of the acting DCM position fail to allege an adverse action and may not survive the Department's 12(b)(6) motion. His allegations concerning his purportedly negative EER, however, have been stated with sufficient factual detail to survive the motion. Therefore, the defendant's Partial Motion to Dismiss [ECF No. 24] will be **GRANTED IN PART** and **DENIED IN PART** and Pratt's Title VII claims of discrimination and retaliation arising out of the Department's failure to appoint him as acting DCM will be dismissed.

A separate order will issue this date.

Date: July 5, 2018

Royce C. Lamberth
United States District Judge